UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JEREMY CARROLL ADKISON,<br><br>Plaintiff,<br><br>v.<br><br>JEFF PAUL PAYNE; ADAM H. GREEN; BRENNAN ALLAN WRIGHT; MATTHEW L. JESSUP; and KATHY ACKERMAN,<br><br>Defendants. | Case No. 3:26-cv-00224-AKB<br><br>**INITIAL REVIEW ORDER** |

Pending before the Court are Plaintiff Jeremy Carroll Adkison's Application to Proceed In Forma Pauperis (Dkt. 1) and pro se Complaint (Dkt. 2). Pursuant to 28 U.S.C. § 1915, the Court reviews Adkison's request to determine whether he is entitled to proceed in forma pauperis, which permits civil litigants to proceed without prepayment of the filing fee or to pay the filing fee over time. *Rice v. City of Boise City*, No. 1:13-CV-00441-CWD, 2013 WL 6385657, at *1 (D. Idaho Dec. 6, 2013). The Court also undertakes an initial review of the Complaint to ensure it meets the minimum required standards. *See* 28 U.S.C. § 1915(e)(2)(B).

## I. INTRODUCTION

Plaintiff sues Idaho County Magistrate Judge Jeff Paul Payne, District Judge Adam H. Green, deputy prosecutors Brennan Allan Wright and Matthew L. Jessup, and Clerk of the Court Kathy Ackerman (Dkt. 2 at 1-3). He alleges three law-enforcement officers entered his home without a warrant on March 1, 2026, tased him approximately six times, denied him

medical treatment, and arrested him without probable cause (*id.* at 8). Plaintiff also alleges he was detained for approximately thirty days (*id.* at 8, 12).

The remainder of the Complaint principally challenges the handling of related Idaho state-court criminal proceedings. Plaintiff alleges that the named judges, prosecutors, and clerk manipulated criminal case records and warrants, improperly increased his bond, suppressed court filings, and used an unauthorized administrative account associated with a deceased individual (*id.* at 9-13). He attaches compilations purporting to identify irregularities in electronic court and law-enforcement records (*id.* at 14-37). Plaintiff requests damages, return of bond money, invalidation of charges and court orders, and an injunction restricting further prosecution and record alteration (*id.* at 39-40). He seeks $10,000,000 in damages (*id.*).

## II. APPLICATION TO PROCEED IN FORMA PAUPERIS

Any party instituting a civil action in a federal district court is required to pay a filing fee. 28 U.S.C. § 1914. On application, however, a party may proceed in forma pauperis. 28 U.S.C. § 1915. "[A]ny court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal . . . without prepayment of fees or security therefor." 28 U.S.C. § 1915(a)(1). To qualify for in forma pauperis status, a plaintiff must submit an affidavit that includes a statement of all assets the plaintiff possesses and that indicates the plaintiff is unable to pay the fee required. The affidavit is sufficient if it states the plaintiff, because of poverty, cannot "pay or give security for the costs" and still be able to provide for the plaintiff and dependents the "necessities of life." *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948). The affidavit must "state the facts as to affiant's poverty with some particularity, definiteness and certainty." *United States v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981) (internal quotation marks omitted).

Though a litigant need not be destitute to proceed in forma pauperis, "even-handed care must be employed to assure that federal funds are not squandered to underwrite, at public expense . . . the remonstrances of a suitor who is financially able, in whole or in material part, to pull his own oar." *Esquer v. Educ. Mgmt. Corp.*, 2017 WL 11453700, at *1 (S.D. Cal. June 26, 2017) (quoting *Temple v. Ellerthorpe*, 586 F. Supp. 848, 850 (D.R.I. 1984)).

Plaintiff reports no present self-employment income, approximately $500 in cash, no bank accounts, and an older vehicle (Dkt. 1 at 2-3). He identifies monthly housing, utilities, and food expenses totaling at least $850, and states that he has been unable to work (*id*. at 4-5). Although the affidavit leaves some fields unanswered, the stated resources and expenses establish an inability to prepay the filing fee while meeting ordinary necessities. The Court therefore grants the application.

## III. SUFFICIENCY OF THE COMPLAINT

### A. Legal Standard

The Court is required to screen complaints brought by litigants seeking in forma pauperis status. *See* 28 U.S.C. § 1915(e)(2). The Court must dismiss a plaintiff's complaint, or any portion thereof, if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). To state a claim upon which relief can be granted, a complaint must include facts sufficient to show a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).

During this initial review, courts generally construe pro se pleadings liberally, giving pro se plaintiffs the benefit of any doubt. *See Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). Even so, pro se plaintiffs still have the burden of articulating their claims clearly and alleging facts sufficient to support review of each claim. *Pena v. Gardner*, 976 F.2d 469, 471

(9th Cir. 1992). If amending the complaint would remedy the deficiencies, plaintiffs should be notified and provided an opportunity to amend. *See Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

**B. Background**

Adkison alleges that, on March 1, 2026, three law enforcement officers unlawfully entered his property without announcing themselves or obtaining a warrant (Dkt. 2 at 8–13). According to Adkison, the officers immediately assaulted him, used a Taser approximately six times, and refused to provide medical attention despite his requests (*id*.). Adkison claims he was arrested without probable cause and subsequently detained for approximately thirty days on invalid warrants (*id*.). His wife, Michelle, allegedly witnessed the incident and called 911 (*id*.). Adkison contends that law enforcement fabricated the circumstances of his arrest to justify its actions (*id*.). Adkison includes approximately twenty-four pages of purported forensic audit findings identifying particular user accounts, timestamps, document identifiers, and allegedly altered records. He alleges that defendants collectively participated in a fraudulent scheme to manufacture criminal charges, manipulate judicial records, impose excessive bond, and obstruct his access to the courts. He characterizes the alleged misconduct as involving government fraud, identity theft, and violations of his constitutional rights. (Dkt. 2 at 8–13).

Central to these allegations is Adkison's contention that defendants obtained unauthorized access to Idaho's electronic court system through an administrator-level account identified as "TANDS007." Adkison alleges that this account was created or maintained through the stolen identity and digital signature of Tony Vito Middleton, a deceased individual. According to Adkison, the account permitted users to bypass ordinary electronic filing security protocols, alter timestamps and audit logs, insert or modify court documents, revive previously dismissed filings, and manipulate warrant and bond records.

He invokes 42 U.S.C. § 1983 and cites several federal criminal statutes relating to conspiracy, obstruction, and identity fraud (*id.* at 4, 8-13). The complaint does not clearly organize the alleged constitutional violations into separate causes of action against each defendant.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived the plaintiff of a right secured by federal law. *West v. Atkins*, 487 U.S. 42, 48 (1988). The plaintiff must connect each defendant to the challenged constitutional deprivation through factual allegations of personal participation; a defendant's title or general involvement in a proceeding is not enough. *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

## C. Immunity for Judicial, Prosecutorial, and Court-Clerk Functions

Judges are absolutely immune from damages liability for acts performed in their judicial capacity unless they act in the clear absence of all jurisdiction. This protection applies even where a plaintiff alleges that a judicial act was erroneous, malicious, or in excess of authority. *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991) (per curiam); *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978). Plaintiff's challenges to Judge Payne's probable-cause and bond decisions and Judge Green's disposition of related charges concern judicial acts (Dkt. 2 at 10-13, 16-18). The Complaint does not allege facts showing that either judge acted in the clear absence of subject-matter jurisdiction. Damages claims arising from those adjudicative acts are barred.

Prosecutors likewise have absolute immunity for conduct intimately associated with the judicial phase of criminal proceedings, including deciding to initiate charges and presenting the State's case. *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). Prosecutorial immunity depends on the function performed, not the defendant's job title; investigative conduct is not necessarily protected. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 275-76 (1993). Plaintiff

principally challenges Wright's and Jessup's filing or re-filing of charges, submissions in criminal cases, and litigation-related handling of evidence (Dkt. 2 at 10-13, 21-22). Those advocacy functions are immune from damages claims, including claims that the prosecutors used false information.

Court clerks may receive absolute quasi-judicial immunity for functions integral to the judicial process. *Mullis v. U.S. Bankruptcy Court for the Dist. of Nev.*, 828 F.2d 1385, 1390 (9th Cir. 1987). Such tasks include giving out information regarding the law, as well as accepting, filing, or refusing to file documents. *Id*. That protection applies to Ackerman insofar as Plaintiff challenges the ordinary receipt, docketing, and handling of filings or the entry of warrants and bonds pursuant to judicial directions (Dkt. 2 at 9-10, 16-19, 24). But immunity depends on the function performed, not merely the actor's official title. *See Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435-37 (1993). Plaintiff separately alleges that Ackerman manually changed warrant-return statuses and increased his bond from $10,000 to $110,000 (Dkt. 2 at 9, 11, 16, 24, 36). The Court does not hold that quasi-judicial immunity necessarily protects a clerk's unauthorized falsification of official court records, if adequately pleaded.

Judicial and prosecutorial immunity likewise do not attach to every act that a judge or prosecutor might undertake. Plaintiff alleges that all five named defendants used an administrative account called TANDS007, purportedly associated with the identity of a deceased individual, to alter timestamps, filings, and warrant records (Dkt. 2 at 9-12, 19-20). He attaches self-described audit tables identifying particular dates, user IDs, and transactions, including Judge Payne's digital signature on a probable-cause order; Wright's filing of a felony information; and Ackerman's processing of warrant returns (*id.* at 16, 24, 36). The Court considers those alleged transactions rather than disregarding the tables as wholly conclusory. Nevertheless, the identified entries principally document judicial signatures, prosecutorial

filings, and court-clerk transactions; they do not, without more, show identity theft or unauthorized manipulation by the persons listed.

The Complaint does not explain how entries bearing the defendants' ordinary user IDs demonstrate that any particular defendant used TANDS007, distinguish a change made pursuant to judicial direction from an unauthorized one, or connect a particular nonimmune alteration to a deprivation of Plaintiff's federal rights. The Court need not accept Plaintiff's inference of a coordinated illicit scheme merely from the existence of electronic transactions or his disagreement with the resulting records. *See Iqbal*, 556 U.S. at 678. Thus, to the extent Plaintiff alleges independent computer intrusions or intentional alterations outside protected official functions, dismissal rests on the failure to state a plausible claim, not on a categorical extension of immunity to such conduct.

The alleged bond alteration illustrates the distinction. Plaintiff specifically asserts that Ackerman added an additional zero to increase a $10,000 bond to $110,000 (Dkt. 2 at 9, 11). First, adding a zero to $10,000 results in $100,000, not $110,000. Moreover, his accompanying tables describe the $110,000 figure as an aggregation of a $100,000 bond in a 2023 felony case and a $10,000 bond in a 2024 misdemeanor case (*id.* at 16, 19, 24). The entries identified with Ackerman's username concern changing the returns on those earlier warrants from "Outstanding" to "Served," rather than an identified modification of a judge's $10,000 bond order (*id.* at 16, 24, 36). Even accepting Plaintiff's assertion that Ackerman manually entered or changed bond-related information, the Complaint does not plausibly explain how she countermanded a judicial bond determination, whether the allegedly erroneous entry was unauthorized, or how that particular act caused Plaintiff's detention or another constitutional injury. On these allegations, Plaintiff has not plausibly stated a claim under section 1983 against Ackerman based on a nonimmune act.

**D. Remaining Deficiencies and Relief Requested**

Plaintiff's allegations of warrantless entry, repeated taser use, denial of medical care, and arrest potentially implicate rights secured by the Fourth and Fourteenth Amendments (Dkt. 2 at 8). An attached table identifies Craig Hoodman, an Idaho County deputy, and Cody Vance, a Grangeville police officer, as two officers allegedly present for the warrantless entry and use of force (*id.* at 37). Neither officer is named as a defendant (*id.* at 1-3). Nor does the Complaint allege that any of the five named defendants personally participated in the entry, force, arrest, or related denial of care. Accordingly, those allegations do not state a claim against a presently named defendant. Plaintiff is entitled to an opportunity to amend his Complaint to address that deficiency, if he is able. Because Plaintiff is proceeding pro se, however, the Court also identifies additional concerns.

The criminal statutes Plaintiff invokes, including 18 U.S.C. §§ 241 and 242, do not themselves authorize a private civil action. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). His passing reference to RICO also fails to state a civil claim without facts plausibly establishing an enterprise, a pattern of racketeering activity, and a resulting injury to business or property. *See* 18 U.S.C. §§ 1962, 1964(c). Nor does the Complaint identify an independent basis for this Court to vacate orders or warrants entered in state criminal cases, dismiss state charges, or undertake ongoing supervision of state-court proceedings (Dkt. 2 at 39-40).

**E. Leave to Amend**

Damages claims arising from judicial rulings, prosecutorial advocacy, or clerk functions integral to adjudication are barred by absolute immunity, and amendment of those same protected-act theories would be futile. The Complaint nevertheless describes an allegedly unlawful entry and arrest involving non-defendant law-enforcement officers and makes other allegations of conduct that would not necessarily be protected by absolute immunity if

adequately pleaded. Accordingly, the Court cannot conclude at this stage that every possible amendment would be futile. *See Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

Plaintiff may file an amended complaint asserting only claims not barred by immunity. The amended complaint must identify each defendant, describe what that person did and when, identify the particular federal right violated, and explain how that conduct caused Plaintiff's injury. Identifying usernames or disagreeing with court rulings alone is insufficient. The amended complaint must be complete in itself because it will supersede the original Complaint. The Court will screen any amended complaint before directing service.

## IV. ORDER

**IT IS ORDERED that**:

1. Plaintiff's Application to Proceed In Forma Pauperis (Dkt. 1) is **GRANTED**.

2. Plaintiff's Complaint (Dkt. 2) is **DISMISSED** under 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii), **WITH LEAVE TO AMEND** as provided in this Order. Claims seeking damages for protected judicial, prosecutorial, or quasi-judicial acts may not be reasserted.

3. Within **thirty (30) days** after entry of this Order, Plaintiff may file a complete amended complaint addressing the defects identified above. Any amended complaint must bear this case number and will replace, rather than supplement, the original Complaint.

4. If Plaintiff fails to file a timely amended complaint, the Court may dismiss this action without further notice. The Clerk of Court shall not issue summonses unless and until the Court orders service following screening.

DATED: November 20, 2026

Amanda K. Brailsford
U.S. District Court Judge